1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBIN DOLLSON, CANDY HOWARD, and LEONARDO FIGUEROA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>T-MOBILE US, INC. and T-MOBILE USA, INC.,<br><br>Defendants. | NO.<br><br>CLASS ACTION COMPLAINT<br>JURY TRIAL DEMANDED |

Plaintiffs Robin Dollson, Candy Howard, and Leonardo Figueroa, on behalf of themselves and all others similarly situated, assert the following against Defendants T-Mobile US, Inc. and T-Mobile USA, Inc., ("Defendants" or "T-Mobile"), based upon personal knowledge, where applicable, information and belief, and the investigation of counsel.

<u>INTRODUCTION</u>

1.     Plaintiffs' personally identifiable information ("PII") was exfiltrated and

CLASS ACTION COMPLAINT     JURY TRIAL DEMANDED - 1
Case No:

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

compromised in the data breach announced by T-Mobile on January 19, 2023 (the "Data Breach").

2.      T-Mobile is one of the largest consumer brands in the United States and collects vast quantities of personal information from its customers.

3.      T-Mobile has touted its superior technology to persuade consumers to purchase its services. T-Mobile states that it "is the leader in 5G," offering 5G download speeds, upload speeds, and availability, among other things. T-Mobile's efforts have resulted in wireless coverage that reaches over a hundred million people.

4.      T-Mobile assures its customers that it uses "administrative, technical, contractual, and physical safeguards designed to protect [customers'] data while it is under [T-Mobile's] control."

5.      T-Mobile's CEO insists that "[k]eeping [T-Mobile] customers' data safe is a responsibility we take incredibly seriously" and that preventing data breaches "has always been a top priority of [T-Mobile's]."

6.      T-Mobile's Privacy Policy likewise acknowledges that its consumers "trust T-Mobile to connect [them] to the world every day," that "[a] big part of that is maintaining [their] privacy," and that they "deserve transparency, education, choice, protection, and simplicity."

7.      However, as evidenced by the Data Breach—the latest in a long series of similar breaches—T-Mobile failed to meet these obligations and protect sensitive consumer data.

8.      Plaintiffs bring this Class Action Complaint for T-Mobile's failure to protect their information systems that contain PII and their failure to provide timely and adequate notice to Plaintiffs and other Class Members that their PII had been compromised.

9.      The Data Breach was a direct result of T-Mobile's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect Plaintiffs' and Class Member's PII.

CLASS ACTION COMPLAINT      JURY TRIAL DEMANDED - 2
Case No:

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

    10.      Plaintiffs, individually and on behalf of all others similarly situated, bring claims for negligence, negligence *per se*, breach of contract, breach of implied contract, unjust enrichment, the Washington Consumer Protection Act, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, the California Unfair Competition Law, the California Consumer Legal Remedies Act, the California Consumer Privacy Act, and the Declaratory Judgment Act.

    11.      Plaintiffs seek, among other things, damages and injunctive relief requiring T-Mobile to fully and accurately disclose the PII and other information that has been compromised; to adopt reasonably sufficient security practices and safeguards to protect Plaintiffs' and Class Members' PII from unauthorized disclosures in order to prevent incidents like the Data Breach from reoccurring in the future, and to safeguard the PII that remains in T-Mobile's custody.

    12.      Plaintiffs further seek an order requiring T-Mobile to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class Members for ten (10) years, as Plaintiffs and Class Members are at risk and will continue to be at an increased risk of identity theft due to the unauthorized disclosure of their PII as a result of T-Mobile's conduct described herein.

    13.      Given that little information relating to the Data Breach, including the systems that were impacted, has yet been revealed to the public, Plaintiffs anticipate additional support for their claims will be uncovered following a reasonable opportunity for discovery.

<u>JURISDICTION AND VENUE</u>

    14.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class and Subclass exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative members of the Class and Subclass defined below, and a significant portion of putative Class and Subclass Members

CLASS ACTION COMPLAINT          JURY TRIAL DEMANDED -
3
Case No:

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

are citizens of a different state than Defendants.

15.    This Court has general personal jurisdiction over T-Mobile because it maintains its principal place of business at 12920 SE 38th Street, Bellevue, Washington, 98006.

16.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b), (c), and (d) because T-Mobile's principal place of business is located in this District and a substantial portion of the events giving rise to the claims occurred in this District.

PARTIES

**A.    PLAINTIFFS**

17.    Plaintiff Robin Dollson is a natural person and citizen of the Commonwealth of Pennsylvania, residing in Bucks County.

18.    Plaintiff Dollson was notified via email by T-Mobile of the Data Breach and of the impact to her PII.

19.    Plaintiff Dollson's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

20.    As a result of the Data Breach, Plaintiff Dollson spent time and effort researching the Data Breach and reviewing her accounts for fraudulent activity.

21.    Plaintiff Dollson places significant value in the security of her PII. Plaintiff Dollson entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

22.    As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Dollson and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and

other economic and non-economic harm. Plaintiff Dollson and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

23.     As a result of the Data Breach, Plaintiff Dollson has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

24.     Plaintiff Candy Howard ("Plaintiff Howard") is a natural person and citizen of the State of California, residing in San Mateo County.

25.     Plaintiff Howard was notified by T-Mobile via a banner message in her T-Mobile account of the Data Breach and of the impact to her PII.

26.     Plaintiff Howard's PII was disclosed without her authorization to unknown third parties as a result of the Data Breach.

27.     As a result of the Data Breach, Plaintiff Howard spent time and effort researching the Data Breach and reviewing her accounts for fraudulent activity.

28.     Plaintiff Howard places significant value in the security of her PII. Plaintiff Howard entrusted her PII to T-Mobile with the understanding that T-Mobile would keep her information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

29.     As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Howard and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of her personal information, and other economic and non-economic harm. Plaintiff Howard and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

fraud or identify theft.

30.    As a result of the Data Breach, Plaintiff Howard has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

31.    Plaintiff Leonardo Figueroa ("Plaintiff Figueroa") is a natural person and citizen of the State of California, residing in Los Angeles County.

32.    Plaintiff Figueroa was notified by T-Mobile via a banner message in his T-Mobile account of the Data Breach and of the impact to his PII.

33.    Plaintiff Figueroa's PII was disclosed without his authorization to unknown third parties as a result of the Data Breach.

34.    As a result of the Data Breach, Plaintiff Figueroa spent time and effort researching the Data Breach and reviewing his accounts for fraudulent activity.

35.    Plaintiff Figueroa places significant value in the security of his PII. Plaintiff Figueroa entrusted his PII to T-Mobile with the understanding that T-Mobile would keep his information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

36.    As a result of T-Mobile's failure to adequately protect the sensitive information entrusted to it, Plaintiff Figueroa and Class Members suffered actual damages including, without limitation, time related to monitoring their accounts for fraudulent activity, exposure to increased and imminent risk of fraud and identity theft, the loss in value of his personal information, and other economic and non-economic harm. Plaintiff Figueroa and Class Members will now be forced to expend additional time to review their credit reports and monitor their accounts for fraud or identify theft.

37.    As a result of the Data Breach, Plaintiff Figueroa has been and will continue to

CLASS ACTION COMPLAINT    JURY TRIAL DEMANDED - 6
Case No:

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

**B.    DEFENDANTS**

38.    Defendant T-Mobile US, Inc. and its wholly owned subsidiary Defendant T-Mobile USA, Inc. ("Defendants" or "T-Mobile") are a telecommunications company that provides wireless, messaging, and data services along with mobile phones and accessories.

39.    T-Mobile's headquarters are located at 12920 SE 38th Street, Bellevue, Washington, 98006, and they are incorporated under the laws of Delaware.

40.    T-Mobile was entrusted with and was in possession of Plaintiffs' PII.

<u>FACTUAL ALLEGATIONS</u>

**A.    THE DATA BREACH**

41.    On January 19, 2023, T-Mobile announced in a U.S. Securities and Exchange Commission ("SEC") Form 8-K ("SEC 8-K") filing that a "bad actor" had compromised the PII of "approximately 37 million current postpaid and prepaid customer accounts" "without authorization."

42.    Although T-Mobile has released very little public information about the Data Breach, their SEC 8-K stated that their customers' PII was compromised through an "Application Programming Interface" ("API"). APIs are instructions that allow applications to access data and interact with web databases and, if left improperly secured, APIs can be leveraged by malicious actors to mass-harvest information stored in those databases.

43.    Upon detection of the Data Breach, T-Mobile's SEC 8-K stated the company "promptly commenced an investigation with external cybersecurity experts," and "within a day

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

of learning of the malicious activity, we were able to trace the source of the malicious activity and stop it," asserting that "the malicious activity appears to be fully contained at this time."

44.    T-Mobile's SEC 8-K revealed that it believes "the bad actor first retrieved data through the impacted API starting on or around November 25, 2022," and that if failed to detect the unauthorized activity until January 5, 2023.

45.    Jake Williams, an analyst at the *Institute for Applied Network Security*, stated about the most recent Data Breach, that "the bottom line" is that T-Mobile's failure to detect the breach for approximately six weeks indicates that "T-Mobile's API security clearly needs work"—as it "shouldn't be having mass API abuse for more than six weeks."

46.    Chester Wisniewski, field chief technical officer of applied research at the security firm *Sophos*, opined that it was "concerning that the criminals were in T-Mobile's system for more than a month before being discovered," as this "suggests T-Mobile's defenses do not utilize modern security monitoring and threat hunting teams, as you might expect to find in a large enterprise like a mobile network operator."

47.    According to T-Mobile's SEC 8-K, the types of PII compromised in this Data Breach include, but are not limited to: "name, billing address, email, phone number, date of birth, T-Mobile account number and information such as the number of lines on the account and plan features."

**B.    T-MOBILE FAILED TO PROVIDE ADEQUATE NOTICE**

48.    T-Mobile's SEC 8-K stated the company has "notified certain federal agencies about the incident" and has "begun notifying customers whose information may have been obtained by the bad actor in accordance with applicable state and federal requirements."

49.    However, data breach notices sent to and received by victims of the Data Breach, including Plaintiffs, are woefully deficient. Instead of warning Data Breach victims that they are at significant risk of identity theft and fraud, the notice by T-Mobile states that T-Mobile

CLASS ACTION COMPLAINT            JURY TRIAL DEMANDED - 8
Case No:

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

"prevented the most sensitive types of customer information from being accessed," and that "[c]ustomer accounts and finances are not put directly at risk by this event."

50.    T-Mobile's January 19, 2023 press release announcing the Data Breach further downplayed the value of what was stolen, stating that it believed "[n]o passwords, payment card information, social security numbers, government ID numbers or other financial account information were compromised" and asserting that "no information was obtained for impacted customers that would compromise the safety of customer accounts or finances," and that "customer accounts and finances should not be put at risk directly by this event."

51.    These statements are highly misleading as the PII compromised in the Data Breach significantly increases the risk of identity theft and fraud for victims. For example, Chester Wisniewski at *Sophos*, stated "[t]he information stolen in this breach is ideal for **SIM swapping attacks** and other forms of identity theft," which "should be another reason for T-Mobile customers to lock down their accounts and move away from SMS-based multifactor authentication" for their accounts. (emphasis added).

52.    Here, Data Breach victims, including Plaintiffs, are at significant risk of "SIM swapping attacks," where cybercriminals contact a wireless carrier and use stolen PII to pass themselves off as an account holder, then ask that their phone number be transferred to a new SIM card, which gives them access to not only the wireless number and account, but also any two-factor authentication codes that might come to the phone via text message.

53.    Justin Fier, senior vice president at the security company *Darktrace*, stated that such massive consumer profiles could be of use to everyone from nation-state hackers to criminal syndicates: "There are dozens of ways that the information that was stolen could be weaponized…there's a bigger possibility they'll be targeted by scammers, possibly impersonating T-Mobile, either by phone or email…[and] with key tidbits of information like account numbers, those scammers will sound much more convincing."

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

54.     Data security researcher Brian Krebs, from the leading data privacy blog *Krebs on Security*, stated that "if the past is any teacher much of [the compromised data] will wind up posted online soon," and "[i]t is a safe bet that scammers will use some of this information to target T-Mobile users with phishing messages, account takeovers and harassment."

55.     For this reason, Krebs goes onto say, that "T-Mobile customers should fully expect to see phishers taking advantage of public concern over the breach to impersonate the company—and possibly even send messages that include the recipient's compromised account details to make the communications look more legitimate." Similarly, Krebs has said, "[d]ata stolen and exposed in this breach may also be used for identity theft," including SIM swap attacks, because "[m]any online services allow users to reset their passwords just by clicking a link sent via SMS," as mobile phone numbers have become "de facto identity documents." According to Krebs, this in turn results in "losing control over your phone number thanks to an unauthorized SIM swap."

56.     T-Mobile's notification efforts to Plaintiffs and Class Members fell woefully short of providing crucial information about the Data Breach. These notification efforts consisted of brief messages with little substantive information that failed to warn victims to take action to protect themselves from identity theft and fraud. These notification efforts caused the harm suffered by Plaintiffs and Class Members, by failing to timely provide them with the necessary details about the Data Breach.

**C.      T-MOBILE'S HISTORY OF DATA BREACHES**

57.     This Data Breach is directly attributable to T-Mobile's repeated history of security failures. Data breaches have now become an annual event for T-Mobile the last several years. This particular Data Breach is at least T-Mobile's *eighth* data breach since 2017.

58.     In 2017, Karan Saini, a security researcher, found a "bug" on a T-Mobile website that allowed hackers to access PII such as email addresses, account numbers, and IMSI numbers,

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

just by knowing or guessing a customer's phone number. According to Saini, T-Mobile had 76 million customers, and an attacker could have run a script to scrape the data (email, name, billing account number, IMSI number, other numbers under the same account which are usually family members) from all 76 million of these customers to create a searchable database with accurate and up-to-date information of all users, making every T-Mobile cell phone owner a victim. T-Mobile had no mechanism in place to prevent this type of critical data breach.  According to a hacker, the "bug" had been exploited by multiple hackers over a multi-week period before it was discovered by Saini. The hackers who found the "bug" before Saini even uploaded a tutorial on how to exploit it on YouTube.

59.    In 2018, hackers gained access to T-Mobile servers and stole the PII of roughly two million T-Mobile customers. The stolen PII included names, email addresses, account numbers, other billing information, and encrypted passwords. T-Mobile misleadingly downplayed the hack, claiming that no passwords were "compromised," when in reality hackers stole millions of encrypted passwords that were likely decrypted by the hackers due to the weak encoding algorithm employed by T-Mobile, leading security experts to advise affected customers to assume their passwords were cracked and change them as a result.

60.    In 2019, hackers accessed the PII of roughly 1 million T-Mobile prepaid customers. The PII included names, phone numbers, addresses, account information, and rate, plan, and calling features.

61.    In March 2020, T-Mobile disclosed it was subject to a data breach that exposed customer and employee PII, including names, addresses, social security numbers, financial account information, government identification numbers, phone numbers, and billing account information.

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

62.    Later in 2020, T-Mobile suffered yet another data breach in which hackers accessed T-Mobile's customer proprietary network information ("CPNI") and undisclosed call-related information for hundreds of thousands of customers.

63.    In August 2021, reports emerged that T-Mobile had suffered one of the largest data breaches in history, in which cybercriminals exploited T-Mobile's data security protocols and gained access to internal servers containing the PII of approximately 76.6 million current, former, and prospective T-Mobile customers—including names, addresses, dates of birth, driver's license numbers, Social Security Numbers, phone numbers, and unique technical identifiers tethered to customers' mobile phones—exfiltrating a purported 106 GB of this data and posting a subset of the stolen PII for sale on the "dark web."

64.    In December 2021, T-Mobile disclosed that several customers had experienced SIM swap attacks, stating: "We informed a very small number of customers that the SIM card assigned to a mobile number on their account may have been illegally reassigned or limited account information was viewed."

65.    Further, in April 2022 it was announced that members of the *LAPSUS$* cybercrime group breached T-Mobile multiple times in March, stealing source code for a range of company projects and accessing employee accounts with access to an internal T-Mobile tool for managing customer accounts.

66.    As Chester Wisniewski at *Sophos* stated about the most recent Data Breach, "I'm certainly disappointed to hear that, after as many breaches as they've had, they still haven't been able to shore up their leaky ship," deadpanning "[a]nother day, another T-Mobile breach."

67.    Similarly, Neil Mack, senior analyst for *Moody's Investors Service*, stated "[w]hile these cybersecurity breaches may not be systemic in nature, their frequency of occurrence at T-Mobile is an alarming outlier relative to telecom peers," noting that this Data Breach raises serious questions about T-Mobile's security practices and cyber governance.

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

68.    Given the numerous data breaches pre-dating this Data Breach, T-Mobile was clearly on notice and aware of its data security failures. The fact that subsequent data breaches have occurred reinforces that Plaintiffs' PII, which remains in T-Mobile's possession, is not safe.

### D.    T-MOBILE'S COLLECTION AND STORAGE OF PII

69.    T-Mobile is a publicly traded company and the second largest wireless carrier in the United States, with over 100 million current subscribers.

70.    T-Mobile's Privacy Policy, available on its website, states that it applies "to personal data we have about you," meaning data that "identifies, relates to, describes, can be associated with, or could reasonably identify you as an individual." This includes "data like your name, address, or email address, as well as less obvious data like demographic data, device and usage data, call records, advertising ID, and location data[.]"

71.    The Privacy Policy further states that it applies to "all personal data we collect and use when you access or use our cell and data services, websites, apps, and other services (our 'services'), purchase and use our devices and products ('products'), visit our retail stores, or communicate or interact with us in any way."

72.    T-Mobile's Privacy Policy provides customers with detailed promises regarding the treatment of their PII, including how T-Mobile uses customers' data for its own benefit and profit. For example, T-Mobile confirms that it uses customers' personal data to "[a]dvertise and market products and services from T-Mobile and other companies to you, including through targeted advertising and communications about promotions and events, contents, and sweepstakes"; and to "[c]onduct research and create reports from analysis of things like usage patterns and trends and deidentify or aggregate personal data to create business and market analysis and reports."

73.    T-Mobile agreed that it would only share data under certain circumstances, which include: "***with your consent or at your direction,*" "*with the account holder***," "between T-

Mobile brands and companies," "to provide benefits," "to our service providers," "to other third parties . . . for uses described in this notice or for purposes you have requested," "for identity verification and fraud prevention services," "caller ID providers," "in a business transfer or transaction" which is specified as a "corporate business transaction like an acquisition, divestiture, sale of company assets," and "for legal process and protection." (emphasis added).

74.     None of the enumerated circumstances involve sharing Plaintiffs' or the Class Members' PII with hackers and cyber criminals.

75.     After limiting the ways it would share PII and also listing the ways T-Mobile benefits and profits from tracking and targeting its customers and non-customers through collecting and maintaining their valuable PII, T-Mobile's Privacy Policy pledges to them that their PII is secure, stating that: (i) personal data will be disclosed only "***with your consent, which we may get in writing, online, or orally***," and (ii) T-Mobile uses "***administrative, technical, contractual, and physical safeguards designed to protect your data***." (emphasis added).

76.     As discussed herein, T-Mobile failed to comply with these Privacy Policy promises to protect Plaintiffs' and Class Members' PII.

77.     T-Mobile's acknowledges that consumers "***trust T-Mobile to connect you to the world every day, and we're working hard to earn a place in your heart. A big part of that is maintaining your privacy. We believe you deserve transparency, education, choice, protection, and simplicity***." (emphasis added). These are empty promises for the millions of consumers affected by T-Mobile's most recent Data Breach.

### E.     T-MOBILE FAILED TO COMPLY WITH DATA SECURITY INDUSTRY STANDARDS

78.     T-Mobile is well aware of the importance of safeguarding Plaintiffs' and Class Members' PIII, that by virtue of their business—a wireless carrier who collects PII—they place Plaintiffs' and Class Members' PII at risk of being targeted by cybercriminals.

CLASS ACTION COMPLAINT        JURY TRIAL DEMANDED - 14
Case No:

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

79.     Thus, T-Mobile is aware that the PII that they collect, organize, and store, can be used by cybercriminals to engage in crimes such as identity fraud and theft using Plaintiffs' and Class Members' PII.

80.     Because T-Mobile failed to implement, maintain, and comply with necessary cybersecurity requirements, as a result, T-Mobile was unable to protect Plaintiffs' and Class Members' information and confidentiality, and protect against obvious and readily foreseeable threats to information security and confidentiality.

81.     As a proximate result of such failures, cybercriminals gained unauthorized access to T-Mobile's network and acquired Plaintiffs' and Class Members' PII in the Data Breach without being stopped.

82.     T-Mobile was unable to prevent the Data Breach and was unable to detect the unauthorized access to vast quantities of sensitive and protected files containing Plaintiffs' and Class Members' PII.

83.     Commonly accepted data security standards among businesses that store personal information, such as the PII involved here, include, but are not limited to: maintaining a secure firewall configuration; monitoring for suspicious or irregular traffic to servers; monitoring for suspicious credentials used to access servers; monitoring for suspicious or irregular activity by known users; monitoring for suspicious or unknown users; monitoring for suspicious or irregular server requests; monitoring for server requests for personal and financial information; monitoring for server requests from VPNs; and monitoring for server requests from Tor exit nodes.

84.     Based upon the known details of the Data Breach and how it occurred, T-Mobile also failed to fully comply with industry-standard cybersecurity practices, including, but not limited to, proper firewall configuration, network segmentation, secure credential storage, rate limiting, user-activity monitoring, data-loss prevention, and intrusion detection and prevention.

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

85.     The U.S. Federal Trade Commission ("FTC") publishes guides for businesses for Cybersecurity (*Start with Security: A Guide for Business*, (June 2015)) and protection of personal and financial information (*Protecting Personal Information: A Guide for Business*, (Oct. 2016)), which includes basic security standards applicable to all types of businesses.

86.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer information, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

87.     Because T-Mobile were entrusted with Plaintiffs' and Class Members' PII, they had and have a duty to keep the PII secure.

88.     Plaintiffs and Class Members reasonably expect that when they entrusted their PII to T-Mobile they will safeguard their information.

89.     Despite T-Mobile's obligations, T-Mobile failed to appropriately monitor and maintain their data security systems in a meaningful way so as to prevent the Data Breach.

90.     Had T-Mobile properly maintained their systems and adequately protected them, they could have prevented the Data Breach.

## F.     T-MOBILE VIOLATED THEIR COMMON LAW DUTY OF REASONABLE CARE

91.     T-Mobile was aware of the importance of security in maintaining personal information (particularly sensitive personal information like the PII involved here), and the value consumers place on keeping their PII secure.

92.     In addition to obligations imposed by federal and state law, T-Mobile owed and continues to owe a common law duty to Plaintiffs and Class Members—who entrusted T-Mobile

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

with their PII—to exercise reasonable care in receiving, maintaining, and storing, the PII in T-Mobile's possession.

93.     T-Mobile owed and continues to owe a duty to prevent Plaintiffs' and Class Members' PII from being compromised, lost, stolen, accessed, or misused by unauthorized third parties. An essential part of T-Mobile's duty was (and is) the obligation to provide reasonable security consistent with current industry best practices and requirements, and to ensure information technology systems and networks, in addition to the personnel responsible for those systems and networks, adequately protected and continue to protect Plaintiffs' and Class Members' PII.

94.     T-Mobile owed a duty to Plaintiffs and Class Members, who entrusted T-Mobile with extremely sensitive PII to design, maintain, and test the information technology systems that housed Plaintiffs' and Class Members' PII, to ensure that the PII in T-Mobile's possession was adequately secured and protected.

95.     T-Mobile owed a duty to Plaintiffs and Class Members to create, implement, and maintain reasonable data security practices and procedures sufficient to protect the PII stored in T-Mobile's systems. In addition, this duty also required T-Mobile to adequately train its employees and others with access to Plaintiffs' and Class Members' PII on the procedures and practices necessary to safeguard such sensitive information. This duty also required supervision, training, and compliance on T-Mobile's part to ensure that it complied with creating, implementing, and maintaining reasonable data security practices and procedures sufficient to protect Plaintiffs' and Class Members' PII.

96.     T-Mobile owed a duty to Plaintiffs and Class Members to implement processes that would enable T-Mobile to timely detect a breach of its information technology systems, and a duty to act upon any data security warnings or red flags detected by such systems in a timely fashion.

CLASS ACTION COMPLAINT       JURY TRIAL DEMANDED -
17
Case No:

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

97.     T-Mobile owed a duty to Plaintiffs and Class Members to disclose when and if their information technology systems and data security practices were not sufficiently adequate to protect and safeguard Plaintiffs' and Class Members' PII.

98.     T-Mobile owed a duty to Plaintiffs and Class Members to timely and adequately disclose the fact that a data breach, resulting in unauthorized access to their PII, had occurred.

99.     T-Mobile breached these duties.

100.    T-Mobile failed to publicly describe the full extent of the Data Breach and notify affected parties. This demonstrates that T-Mobile did not properly implement measures designed to timely detect a data breach of their information technology systems, as required to adequately safeguard Plaintiffs' and Class Members' PII.

101.    T-Mobile also breached their duty to create, implement, and maintain reasonable data security practices and procedures sufficient to protect Plaintiffs' and Class Members' PII.

## G.     THE VALUE OF PRIVATE INFORMATION AND EFFECTS OF UNAUTHORIZED DISCLOSURE

102.    T-Mobile was well aware that the protected PII it acquires, stores, and utilizes is highly sensitive and of significant value to the owners of the PII and those who would use it for wrongful purposes.

103.    PII is a valuable commodity to identity thieves, particularly when it is aggregated in large numbers. Former United States Attorney General William P. Barr made clear that consumers' sensitive personal information commonly stolen in data breaches "has economic value."  The purpose of stealing large caches of personal data is to use it to defraud individuals or to place it for illegal sale and to profit from other criminals who buy the data and use it to commit fraud and identity theft. Indeed, cybercriminals routinely post stolen personal information on anonymous websites, making the information widely available to a criminal underworld.

CLASS ACTION COMPLAINT          JURY TRIAL DEMANDED - 18
Case No:

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

104.    There is an active and robust market for this information. As John Sancenito, president of *Information Network Associates*, a company which helps companies with recovery after data breaches, explained after a data breach "[m]ost of the time what [data breach hackers] do is they steal the data and then they sell the data on the dark web to the people who actually commit the fraud."

105.    The ramifications of T-Mobile's failure to keep Plaintiffs' and Class Members' PII secure are long lasting and severe. To avoid detection, identity thieves often hold stolen data for months or years before using it. Also, the sale of stolen information on the "dark web" may take months or more to reach end-users, in part because the data is often sold in small batches as opposed to in bulk to a single buyer. Thus, Plaintiffs and Class Members must vigilantly monitor their accounts *ad infinitum*.

106.    Thus, T-Mobile knew, or should have known, the importance of safeguarding the PII entrusted to it and of the foreseeable consequences if its systems were breached. T-Mobile failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

107.    As a highly sophisticated party that handles sensitive PII, T-Mobile failed to establish and/or implement appropriate administrative, technical and/or physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class Members' PII to protect against anticipated threats of intrusion of such information.

108.    Identity thieves use stolen PII for various types of criminal activities, such as when personal information is used to commit fraud or other crimes, including credit card fraud, phone or utilities fraud, bank fraud and government fraud.

109.    The PII exfiltrated in the Data Breach can also be used to commit identity theft by placing Plaintiffs and Class Members at a higher risk of "phishing," "vishing," "smishing," and "pharming," which are other ways for cybercriminals to exploit information they already

CLASS ACTION COMPLAINT    JURY TRIAL DEMANDED -
19
Case No:

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

have in order to get even more personally identifying information from a person through unsolicited email, text messages, and telephone calls purportedly from a legitimate company requesting personal, financial, and/or login credentials.

110.     There is often a lag time between when fraud occurs versus when it is discovered, as well as between when PII is stolen and when it is used. According to the *U.S. Government Accountability Offic*e, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data
> may be held for up to a year or more before being used to commit
> identity theft. Further, once stolen data have been sold or posted
> on the Web, fraudulent use of that information may continue for
> years. As a result, studies that attempt to measure the harm
> resulting from data breaches cannot necessarily rule out all future
> harm.

111.     Personal information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the cyber black market (i.e., the "dark web") for years.

112.     Plaintiffs and Class Members rightfully place a high value not only on their PII, but also on the privacy of that data.

113.     Thus, Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future.

114.     Data breaches are preventable. As Lucy Thompson wrote in the *Data Breach and Encryption Handbook*, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions." She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not

CLASS ACTION COMPLAINT          JURY TRIAL DEMANDED -
20
Case No:

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

compromised…" and "[m]ost of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures…Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs."

### H.    T-MOBILE FAILED TO COMPLY WITH THE FTC ACT

115.    T-Mobile is prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45, from engaging in "unfair or deceptive acts or practices in or affecting commerce."  The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

116.    T-Mobile's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice that violates the FTC Act.

117.    The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices.  According to the FTC, the need for data security should be factored into all business decision-making.

118.    In 2007, the FTC published guidelines establishing reasonable data security practices for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems. The guidelines also recommend that businesses consider using an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone may be trying to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

119.    The FTC has also published a document entitled "FTC Facts for Business," which highlights the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.

120.    T-Mobile is aware of and failed to follow the FTC guidelines and failed to adequately secure PII.

121.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act.  Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

122.    T-Mobile failed to properly implement basic data security practices.  T-Mobile's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumer PII, or to prevent the disclosure of such information to unauthorized individuals constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

123.    T-Mobile was at all times fully aware of their obligations to protect the PII of consumers because of its business of obtaining, collecting, and storing PII.  T-Mobile was also aware of the significant repercussions that would result from their failure to do so.

I.      **THE DATA BREACH DAMAGED PLAINTIFFS AND CLASS MEMBERS**

124.    The ramifications of T-Mobile's failure to keep PII secure are long-lasting and severe. Victims of data breaches are more likely to become victims of identity fraud.  In 2019 alone, consumers lost more than $1.9 billion to identity theft and fraud.

125.    Plaintiffs and Class Members have faced a substantial and imminent risk of identity theft and fraud as a result of the Data Breach.  Unauthorized third parties carried out the Data Breach and stole the personal information of Plaintiffs and Class Members with the intent to use it for fraudulent purposes and/or sell it to other cybercriminals.

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

126.    The risk of identity theft is particularly substantial when the PII compromised is unique to a specific individual, as it is here.

127.    Plaintiffs and Class Members have spent and will continue to spend substantial amounts of time monitoring their accounts for identity theft and fraud, the opening of fraudulent accounts, disputing fraudulent transactions, and reviewing their financial affairs more closely than they otherwise would have done but for the Data Breach. These efforts are burdensome and time-consuming, especially because T-Mobile has failed to disclose the full extent of when the breach occurred or how long it lasted, forcing customers to continue to monitor their accounts indefinitely.

128.    Many Class Members will also incur out of pocket costs for protective measures such as identity theft protection, credit monitoring fees, credit report fees, credit freeze fees, fees for replacement cards, and similar costs related to the Data Breach.

129.    Plaintiffs and Class Members now face years of constant surveillance of their personal records, monitoring, and loss of rights.  Plaintiffs and the Class are incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

130.    Plaintiffs and Class Members are now at heightened risk for "SIM swapping." Customers often request SIM swaps for legitimate reasons when they obtain new phones or switch mobile carriers. However, T-Mobile does not have adequate protections in place to prevent fraudulent SIM swap attacks from occurring, and the particular data released in the Data Breach makes it much more likely that a T-Mobile customer, such as Plaintiffs and Class Members, will become a victim of a SIM swap attack.

131.    In a fraudulent SIM swap, a would-be hacker contacts T-Mobile and impersonates the legitimate customer. This impersonation is made substantially easier when directed at T-Mobile customers, because hackers now have access to data about T-Mobile customers,

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

including their names, billing addresses, email, phone numbers, dates of birth, account number, information such as the number of lines on the account and plan features.

132.    Following a fraudulent SIM swap the subscriber (now victim)'s phone loses connection to the network, and they cannot use their network to call, text, or use the internet, and they are inhibited in their attempts to warn their wireless carrier of the fraud. Subsequently all phone calls and text messages that would normally have gone to the victim's phone now go to the fraudsters' phone.

133.    If the fraudster has even one other data point, such as an email address, they can often use the phone number to get into the victim's email account through the forgotten password feature, or by using the victim's legitimate phone number to pass *two-factor authentication*.

134.    Because customer email addresses were compromised in the Data Breach (and connected to a T-Mobile customer account), this data is now readily available to SIM swap hackers.

135.    Given T-Mobile's failure to protect Plaintiffs' and the Class Members' PII despite multiple data breaches in the past, Plaintiffs have a significant and cognizable interest in obtaining injunctive and equitable relief (in addition to any monetary damages, restitution, or disgorgement) that protects them from suffering further harm, as their PII remains in T-Mobile's possession.

136.    As a result of T-Mobile's failure to prevent the Data Breach, Plaintiffs and Class Members have suffered and will continue to suffer injuries, loss of time and productivity through efforts to ameliorate, mitigate, and deal with the future consequences of the Data Breach; theft of their valuable PII; the imminent and certainly impeding injury flowing from fraud and identity theft posed by their PII being disclosed to unauthorized recipients and cybercriminals; damages to and diminution in value of their PII; and continued risk to Plaintiffs' and the Class Members' PII, which remains in the possession of T-Mobile and which is subject to further breaches so

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

long as T-Mobile fails to undertake appropriate and adequate measures to protect the PII which it was entrusted.

137.    In the case of a data breach, merely reimbursing a consumer for a financial loss due to identity theft or fraud does not make that individual whole again. On the contrary, after conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems."

138.    Plaintiffs and Class Members also suffered a "loss of value" of their sensitive personal information when it was stolen by a hacker in the Data Breach. A robust market exists for stolen personal information. Hackers sell personal information on the dark web—an underground market for illicit activity, including the purchase of hacked personal information— at specific identifiable prices.

139.    Plaintiffs and Class Members also suffered "benefit of the bargain" damages. Plaintiffs and Class Members overpaid for services that should have been—but were not— accompanied by adequate data security. Part of the charges and fees Plaintiffs and Class Members paid to T-Mobile were intended to be used to fund adequate data security. Plaintiffs and Class Members did not get what they paid for.

140.    Class Members who experience actual identity theft and fraud will also be harmed by the inability to use their credit or debit cards when their accounts are suspended or otherwise rendered unusable due to fraudulent charges. To the extent Class Members are charged monthly/annual fees for their credit and/or debit accounts, they are left without the benefit of that bargain while they await receipt of their replacement cards. Class Members will be harmed further by the loss of rewards points or airline mileage that they cannot accrue while awaiting replacement cards. The inability to use payment cards may also result in missed payments on

CLASS ACTION COMPLAINT        JURY TRIAL DEMANDED -
25
Case No:

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

bills and loans, late charges and fees, and adverse effects on their credit, including decreased credit scores and adverse credit notations.

141.    A victim whose personal information has been stolen or compromised may not see the full extent of identity theft or fraud until long after the initial breach. Additionally, a victim whose PII has been stolen may not become aware of charges when they are nominal, as typical fraud-prevention algorithms may not capture such charges. Those charges may be repeated, over and over again, on a victim's account.

142.    The risk of identity theft and fraud will persist for years. Identity thieves often hold stolen data for months or years before using it to avoid detection. Also, the sale of stolen information on the dark web may take months or more to reach end-users, in part because the data is often sold in small batches to various individuals rather than in bulk to a single buyer. Thus, Plaintiffs and Class Members must vigilantly monitor their financial accounts *ad infinitum*.

## CLASS ACTION ALLEGATIONS

143.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), (b)(3), and (c)(4) on behalf of the following Nationwide Class:

> All persons in the United States whose personal information was compromised in the Data Breach made public by T-Mobile on January 19, 2023 ("**Nationwide Class**").

144.    Excluded from the Nationwide Class are T-Mobile, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which T-Mobile have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

145.    Plaintiff Dollson brings this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), (b)(3), and (c)(4) on behalf of the following Pennsylvania Subclass:

CLASS ACTION COMPLAINT        JURY TRIAL DEMANDED - 26
Case No:

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

1
2
3

All persons in Pennsylvania whose personal information was compromised in the Data Breach made public by T-Mobile on January 19, 2023 ("**Pennsylvania Subclass**").

4
5
6
7
8

146.   Excluded from the Pennsylvania Subclass are T-Mobile, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which T-Mobile have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

9
10
11
12

147.   Plaintiffs Howard and Figueroa brings this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), (b)(3), and (c)(4) on behalf of the following California Subclass:

13
14

All persons in California whose personal information was compromised in the Data Breach made public by T-Mobile on January 19, 2023 ("**California Subclass**").

15
16
17
18
19

148.   Excluded from the California Subclass are T-Mobile, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which T-Mobile have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

20
21

149.   Plaintiffs reserve the right to modify or amend the definition of the proposed Class(es), if necessary, before this Court determines whether certification is appropriate.

22
23
24
25

150.   Certification of Plaintiffs' claims for class-wide treatment are appropriate because all elements of Fed. R. Civ. P. 23(a), (b)(2)-(3), and (c)(4) are satisfied. Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

151.   **Numerosity:** All requirements of Fed. R. Civ. P. 23(a)(1) are satisfied. The members of the Nationwide Class, Pennsylvania Subclass, and California Subclass are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. While the exact number of Class Members is unknown to Plaintiffs at this time, T-Mobile has acknowledged that millions of individuals' PII has been compromised in this Data Breach. Class Members may be identified through objective means. Class Members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

152.   **Commonality and Predominance:** All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

   a.   Whether T-Mobile engaged in active misfeasance and misconduct alleged herein;

   b.   Whether T-Mobile owed a duty to Class Members to safeguard their sensitive personal information;

   c.   Whether T-Mobile breached its duty to Class Members to safeguard their sensitive personal information;

   d.   Whether T-Mobile knew or should have known that its data security systems and monitoring processes were deficient;

   e.   Whether Plaintiffs and Class Members suffered legally cognizable damages as a result of the Data Breach;

   f.   Whether T-Mobile's failure to provide adequate security proximately caused Plaintiffs' and Class Members' injuries; and

CLASS ACTION COMPLAINT        JURY TRIAL DEMANDED - 28
Case No:

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

g. Whether Plaintiffs and Class Members are entitled to declaratory and injunctive relief.

153. **Typicality:** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. All Plaintiffs are members of the Nationwide Class. Plaintiff Dollson is a member of the Pennsylvania Subclass, and Plaintiffs Howard and Figueroa are members of the California Subclass. Plaintiffs' claims are typical of the claims of all Class Members because Plaintiffs, like other Class Members, suffered theft of their sensitive personal information in the Data Breach.

154. **Adequacy of Representation:** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiff Dollson is an adequate Class representative because she is a member of both the Nationwide Class and Pennsylvania Subclass and her interests do not conflict with the interests of other Class Members that she seeks to represent. Plaintiffs Howard and Figueroa are adequate Class representatives because they are members of both the Nationwide Class and California Subclass and their interests do not conflict with the interests of other Class Members that they seeks to represent. Plaintiffs are committed to pursuing this matter for the Class with the Class's collective best interest in mind. Plaintiffs have retained counsel competent and experienced in complex class action litigation of this type and Plaintiffs intend to prosecute this action vigorously. Plaintiffs, and their counsel, will fairly and adequately protect the Class's interests.

155. **Predominance and Superiority:** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiffs' case will also resolve them for the Class's claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and other Class Members are relatively small compared to the burden and expense that

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

would be required to individually litigate their claims against T-Mobile, so it would be impracticable for members of the Class to individually seek redress for T-Mobile's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

156.    **Cohesiveness:** All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. T-Mobile has acted, or refused to act, on grounds generally applicable to the Nationwide Class, Pennsylvania Subclass, and California Subclass such that final declaratory or injunctive relief is appropriate.

157.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

   a.    Whether T-Mobile owed a legal duty to Plaintiffs and the Class to exercise due care in collecting, storing, using, and safeguarding their PII;

   b.    Whether T-Mobile's data security practices were reasonable in light of best practices recommended by data security experts;

   c.    Whether T-Mobile's failure to institute adequate protective security measures amounted to negligence;

   d.    Whether T-Mobile failed to take commercially reasonable steps to safeguard consumer PII; and

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

e.      Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

158.    Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on newly learned facts or legal developments that arise following additional investigation, discovery, or otherwise.

<u>CLAIMS FOR RELIEF</u>

**<u>COUNT I</u>**

**NEGLIGENCE**

159.    Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

160.    T-Mobile obtained Plaintiffs' and Class Members' sensitive personal information in connection with Plaintiffs and Class Members signing up for T-Mobile's wireless services.

161.    By collecting and maintaining sensitive personal information, T-Mobile had a common law duty of care to use reasonable means to secure and safeguard the sensitive personal information and to prevent disclosure of the information to unauthorized individuals. T-Mobile's duty included a responsibility to implement processes by which it could detect a data breach of this type and magnitude in a timely manner.

162.    T-Mobile owed a duty of care to Plaintiffs and Class Members to provide data security consistent with the various statutory requirements, regulations, and other notices described above.

163.    T-Mobile's duty of care arose as a result of, among other things, the special relationship that existed between T-Mobile and its customers. T-Mobile was the only party in a

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

position to ensure that its systems were sufficient to protect against the foreseeable risk that a data breach could occur that would result in substantial harm to consumers.

164.    T-Mobile was subject to an "independent duty" untethered to any contract between Plaintiffs and Class Members and T-Mobile.

165.    T-Mobile breached its duties, and thus was negligent, by failing to use reasonable measures to protect customers' sensitive personal information. T-Mobile's negligent acts and omissions include, but are not limited to, the following:

 a. failure to employ systems and educate employees to protect against malware;

 b. failure to comply with industry standards for software and server security;

 c. failure to track and monitor access to its network and personal information;

 d. failure to limit access to those with a valid purpose;

 e. failure to adequately staff and fund its data security operation;

 f. failure to remove, delete, or destroy highly sensitive personal information of consumers that is no longer being used for any valid business purpose;

 g. failure to use due care in hiring, promoting, and supervising those responsible for its data security operations; and

 h. failure to recognize a hacker was stealing personal information from its network while the Data Breach was taking place.

166.    It was foreseeable to T-Mobile that a failure to use reasonable measures to protect its customers' sensitive personal information could result in injury to consumers. Further, actual and attempted breaches of data security were reasonably foreseeable to T-Mobile given the known frequency of data breaches and various warnings from industry experts. Indeed, the Data Breach was foreseeable to T-Mobile as it suffered numerous breaches in the years preceding the Data Breach, yet it failed to rectify its deficient data security.

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

167.     As a direct and proximate result of T-Mobile's negligence, Plaintiffs and Class Members are entitled to all damages, including compensatory, consequential, punitive, and/or nominal damages, in an amount to be proven at trial.

168.     Plaintiffs and Class Members are also entitled to injunctive relief requiring T-Mobile to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class Members for ten (10) years.

## COUNT II

### NEGLIGENCE *PER SE*

169.     Plaintiffs reallege and incorporate all previous allegations as though fully set forth herein.

170.     T-Mobile is liable for negligence *per se* for their violation of the FTC Act, 15 U.S.C. § 45.

171.     As alleged above, pursuant to the Section 5 of FTC Act, 15 U.S.C. § 45, T-Mobile had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' sensitive personal information.

172.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the failure to use reasonable measures to protect sensitive personal information. The FTC publications and orders described above also form part of the basis of T-Mobile's duty.

173.     T-Mobile violated Section 5 of the FTC Act by failing to use reasonable measures to protect sensitive personal information and comply with applicable industry standards, including the FTC Act, as described in detail herein. T-Mobile's conduct was particularly unreasonable given the nature and amount of sensitive personal information it collected and

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

stored and the foreseeable consequences of a data breach, including specifically, as described herein, the damages that would result to consumers.

174.     T-Mobile's services related to the protection of sensitive personal information of its customers is activity that falls outside the provision of common carrier services.

175.     Plaintiffs and Class Members are within the class of persons that Section 5 of the FTC Act was intended to protect, because the FTC Act was expressly designed to protect consumers from "substantial injury."

176.     The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and Class Members.

177.     T-Mobile had a duty to Plaintiffs and Class Members to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and Class Members' sensitive personal information.

178.     T-Mobile breached its duties to Plaintiffs and Class Members under the FTC Act, by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' sensitive personal information.

179.     T-Mobile's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

180.     But for T-Mobile's wrongful and negligent breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members would not have been injured, or would not have been injured to as great a degree.

181.     The injury suffered by Plaintiffs and Class Members was a reasonably foreseeable result of T-Mobile's breach of its duties. T-Mobile knew or should have known that the breach

CLASS ACTION COMPLAINT          JURY TRIAL DEMANDED -
34
Case No:

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

of its duties would cause Plaintiffs and Class Members to suffer the foreseeable harms associated with the exposure of their sensitive personal information.

182.    As a direct and proximate result of T-Mobile's negligence *per se*, Plaintiffs and Class Members sustained damages as alleged herein. Plaintiffs and Class Members are entitled to all damages, including compensatory, consequential, punitive, and/or nominal damages, in an amount to be proven at trial.

183.    Plaintiffs and Class Members are also entitled to injunctive relief requiring T-Mobile to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class Members for ten (10) years.

## COUNT III

### BREACH OF CONTRACT

184.    Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

185.    T-Mobile's Privacy Notice is an agreement between T-Mobile and individuals who provided their PII to T-Mobile, including Plaintiffs and Class Members.

186.    T-Mobile's Privacy Notice states that it applies "to personal data we have about you," meaning "data that identifies, relates to, describes, can be associated with, or could reasonably identify you as an individual." This includes "data like your name, address, or email address, as well as less obvious data like demographic data, device and usage data, call records, advertising ID, and location data[.]" It further states that the Notice applies to "all personal data we collect and use when you access or use our cell and data services, websites, apps, and other services (our 'services'), purchase and use our devices and products ('products'), visit our retail stores, or communicate or interact with us in any way."

CLASS ACTION COMPLAINT          JURY TRIAL DEMANDED -
35
Case No:

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

1

2

3      187.    T-Mobile's Privacy Notice stated at the time of the Data Breach that T-Mobile

"use[s] administrative, technical, contractual, and physical safeguards designed to protect your

data while it is under our control."

4

5      188.    T-Mobile further agreed at the time of the Data Breach that it would only share

data under certain enumerated circumstances, which include: "with your consent or at your

6

direction," "with the account holder," "between T-Mobile brands and companies," "to provide

7

benefits," "to our service providers," "to other third parties . . . for uses described in this notice

8

or for purposes you have requested," "for identity verification and fraud prevention services,"

9

"caller ID providers," "in a business transfer or transaction" which is specified as a "corporate

10

business transaction like an acquisition, divestiture, sale of company assets," and "for legal

11

process and protection."

12      189.    None of the enumerated circumstances involve sharing Plaintiffs' or the Class

13

Members' PII with a criminal hacker.

14      190.    T-Mobile's emphasized in its Privacy Policy at the time of the Data Breach that

15

those who provide their PII to T-Mobile "trust T-Mobile to connect you to the world every day,

16

and we're working hard to earn a place in your heart. A big part of that is maintaining your

17

privacy. We believe you deserve transparency, education, choice, protection, and simplicity."

18      191.    Plaintiffs and Class Members and T-Mobile formed a contract when Plaintiffs

19

and Class Members obtained products or services from T-Mobile, or otherwise provided PII to

20

T-Mobile subject to its Privacy Policy.

21      192.    Plaintiffs and Class Members fully performed their obligations under the

22

contracts with T-Mobile by providing their PII.

23      193.    T-Mobile breached its agreement with Plaintifsf and Class Members by failing to

24

protect their PII. Specifically, it (1) failed to take reasonable steps to use safe and secure systems

25

CLASS ACTION COMPLAINT        JURY TRIAL DEMANDED -        **BORDE LAW PLLC**
36                                                         600 Stewart Street, Suite 400
Case No:                                                   Seattle, Washington 98101
                                                           (206) 531-2722

to protect that information; and (2) disclosed that information to unauthorized third parties, in violation of the agreement.

194.    As a direct and proximate result of T-Mobile's breach of contract, Plaintiffs and Class Members sustained damages as alleged herein. Plaintiffs and Class Members are entitled to all damages, including compensatory, consequential, punitive, and/or nominal damages, in an amount to be proven at trial.

195.    Plaintiffs and Class Members are also entitled to injunctive relief requiring T-Mobile to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class Members for ten (10) years.

## COUNT IV

### BREACH OF IMPLIED CONTRACT

196.    Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

197.    When Plaintiffs and Class Members provided their sensitive personal information to T-Mobile in exchange for T-Mobile's services, they entered into implied contracts with T-Mobile under which T-Mobile agreed to take reasonable steps to protect their sensitive personal information.

198.    T-Mobile solicited and invited Plaintiffs and Class Members to provide their sensitive personal information as part of T-Mobile's regular business practices. Indeed, in order to sign up for many of T-Mobiles services, T-Mobile requires customers to provide personal information sufficient for T-Mobile to check the customer's credit score to obtain T-Mobile's services. Plaintiffs and Class Members accepted T-Mobile's offers and provided their sensitive personal information T-Mobile.

CLASS ACTION COMPLAINT        JURY TRIAL DEMANDED - 37
Case No:

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

199.   When entering into the implied contracts, Plaintiffs and Class Members reasonably believed and expected that T-Mobile's data security practices complied with relevant laws, regulations, and industry standards.

200.    Plaintiffs and Class Members paid money to T-Mobile to purchase T-Mobile's services. Plaintiffs and Class Members reasonably believed and expected that T-Mobile would use part of those funds to obtain adequate data security. T-Mobile failed to do so.

201.   Plaintiffs and Class Members would not have provided their sensitive personal information to T-Mobile in the absence of T-Mobile's implied promise to keep their sensitive personal information reasonably secure.

202.   Plaintiffs and Class Members fully performed their obligations under the implied contracts by paying money to T-Mobile.

203.   T-Mobile breached its implied contracts with Plaintiffs and Class Members by failing to implement reasonable data security measures.

204.   As a direct and proximate result of T-Mobile's breach of implied contract, Plaintiffs and Class Members sustained damages as alleged herein. Plaintiffs and Class Members are entitled to all damages, including compensatory, consequential, punitive, and/or nominal damages, in an amount to be proven at trial.

205.   Plaintiffs and Class Members are also entitled to injunctive relief requiring T-Mobile to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class Members for ten (10) years.

## COUNT V

## UNJUST ENRICHMENT

CLASS ACTION COMPLAINT          JURY TRIAL DEMANDED -
38
Case No:

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

206.     Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

207.     Plaintiffs and Class Members conferred a monetary benefit upon T-Mobile in the form of monies paid for the purchase of items on T-Mobile.

208.     T-Mobile appreciated or had knowledge of the benefits conferred upon it by Plaintiffs and Class Members. T-Mobile also benefited from the receipt of Plaintiffs' and Class Members' sensitive personal information as this was utilized by T-Mobile to check Plaintiffs' and Class Members' credit score, send bills, and process payments for services, among other things.

209.     The monies Plaintiffs and Class Members paid to T-Mobile were supposed to be used by T-Mobile, in part, to pay for adequate data privacy infrastructure, practices, and procedures.

210.     As a result of T-Mobile's conduct, Plaintiffs and Class Members suffered actual damages in an amount equal to the difference in value between what they paid for (T-Mobile's services made with adequate data privacy and security practices and procedures), and what they actually received (T-Mobile's services without adequate data privacy and security practices and procedures).

211.     In equity and good conscience, T-Mobile should not be permitted to retain the money belonging to Plaintiffs and Class Members because T-Mobile failed to implement, or adequately implement, the data privacy and security practices and procedures that Plaintiffs and Class Members paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

212.     T-Mobile is therefore liable to Plaintiffs and Class Members for restitution or disgorgement in the amount of the benefit conferred on T-Mobile as a result of its wrongful conduct, including specifically: the value to T-Mobile of the PII that was stolen in the Data

CLASS ACTION COMPLAINT          JURY TRIAL DEMANDED -
39
Case No:

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

Breach; the profits T-Mobile received and is receiving from the use of that information; the amounts that T-Mobile overcharged Plaintiffs and Class Members for use of T-Mobile's products and services; and the amounts that T-Mobile should have spent to provide reasonable and adequate data security to protect Plaintiffs' and Class Members' PII.

213.    T-Mobile should be compelled to disgorge into a common fund for the benefit of Plaintiffs' and Class Members all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged herein.

## COUNT VI

### VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
### RCW 19.86.010, *et. seq.*

214.    Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

215.    The Washington Consumer Protection Act ("CPA") protects consumers by declaring unlawful all unfair methods of competition and unfair or deceptive acts or practices in commercial markets for goods and services. RCW 19.86.020.

216.    As alleged herein, T-Mobile has consistently maintained subpar security and privacy measures for the use and retention of its consumers' sensitive personal information. These practices were both unfair and deceptive.

217.    Specifically, T-Mobile engaged in unfair acts and practices in violation of the CPA by failing to implement and maintain reasonable security measures to protect consumers' sensitive personal information, including its failure to remedy the previous deficiencies in its systems and servers that had caused multiple, other data breaches.

218.    T-Mobile has statutory, regulatory, and common law obligations to prevent the foreseeable risk of harm to others, including Plaintiffs and the Class, arising out of their retention of consumers' sensitive personal information.

CLASS ACTION COMPLAINT         JURY TRIAL DEMANDED - 40
Case No:

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

219.     At all times it was foreseeable that T-Mobile's failure to adopt reasonable security measures to protect consumers' sensitive personal information would cause harm to Plaintiffs and Class Members and place Plaintiffs and Class Members at a substantial risk of fraud and identity theft.

220.     T-Mobile's failure to implement and maintain reasonable security measures to protect consumers' sensitive personal information and failure to comply with its statutory, regulatory, and common law obligations were likely to, and did, cause substantial injury to Plaintiffs and the Class. T-Mobile's consistent failure to remedy its deficient security measures serve no countervailing benefit to consumers or competition.

221.     T-Mobile had sole responsibility for securing its customers' sensitive personal information and exclusive knowledge of its deficient security measures. There was no way for Plaintiffs or the Class to know about T-Mobile's severely deficient security practices or to avoid their injuries.

222.     Further, T-Mobile's failure to inform Plaintiffs and the Class of its inadequate security practices—which were exclusively known by T-Mobile—and its failure to comply with its obligations to adopt reasonable security measures constitute deceptive acts and practices in violation of the CPA. By offering services to Plaintiffs and Class Members that would require handing over sensitive personal information, Plaintiffs and Class Members reasonably believed that T-Mobile would have sufficient security measures in place to protect this information, including sufficient practices and policies for the use, retention, and disclosure of this sensitive personal information to protect against the foreseeable threat of a data breach and resulting harm. In light of the foreseeable risk of harm to consumers, Plaintiffs and Class Members reasonably believed that T-Mobile would use reasonable practices to protect consumers' sensitive personal information. T-Mobile had a duty to disclose that its data security measures were insufficient to

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

protect consumers' sensitive personal information but failed to do so. T-Mobile's acts, omissions, and practices were likely to and did mislead Plaintiffs and the Class.

223. As a direct and proximate result of T-Mobile's violations of the CPA, Plaintiffs and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including loss of the benefit of their bargain with T-Mobile as they would not have paid T-Mobile for goods and services or would have paid less for such goods and services but for T-Mobile's violations alleged herein; losses from fraud and identity theft; costs for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their sensitive personal information; and an increased, imminent risk of fraud and identity theft.

224. As a result, Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including compensatory damages; statutory damages; restitution; disgorgement; punitive damages; injunctive relief; and reasonable attorneys' fees and costs.

## COUNT VII

### VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW

### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

### (On Behalf of the California Subclass)

225. Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

226. T-Mobile is a "person" as defined by Cal. Bus. & Prof. Code §17201.

227. T-Mobile violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

228. T-Mobile's unlawful, unfair, and deceptive acts and practices include:

CLASS ACTION COMPLAINT    JURY TRIAL DEMANDED - 42
Case No:

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

(a)    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and California Subclass Members' sensitive personal information, directly and proximately causing the Data Breach, and omitting, suppressing, and concealing the material fact of that failure;

(b)    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following well-publicized cybersecurity incidents, directly and proximate causing the Data Breach, and omitting, suppressing, and concealing the material fact of that failure;

(c)    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and California Subclass Members' sensitive personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45 which was a direct and proximate cause of the Data Breach and omitting, suppressing, and concealing the material fact of that failure;

(d)    Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs' and California Subclass Members' sensitive personal information, including by implementing and maintaining reasonable security measures;

(e)    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and California Subclass Members' sensitive personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

(f)    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' and California Subclass Members' personal information; and

CLASS ACTION COMPLAINT        JURY TRIAL DEMANDED -
43
Case No:

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

(g)    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and California Subclass Members' sensitive personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

229.    T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of consumers' sensitive personal information.

230.    As a direct and proximate result of T-Mobile's unfair, unlawful, and fraudulent acts and practices, Plaintiffs and California Subclass Members were injured and lost money or property, including the premiums and/or price received by T-Mobile for its goods and services; the loss of the benefit of their bargain with T-Mobile, as they would not have paid T-Mobile for goods and services or would have paid less for such goods and services but for T-Mobile's violations alleged herein; losses from fraud and identity theft; costs for credit monitoring and identity protection services; wasted time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their sensitive personal information; and an increased, imminent risk of fraud and identity theft.

231.    Plaintiffs and California Subclass Members seek all monetary and non-monetary relief allowed by law, including compensatory damages; restitution; disgorgement; punitive damages; injunctive relief; and reasonable attorneys' fees and costs.

## COUNT VIII

## VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT

### Cal. Civ. Code §§ 1750, *et seq.*

### (On Behalf of the California Subclass)

232.    Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

CLASS ACTION COMPLAINT        JURY TRIAL DEMANDED - 44
Case No:

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

233.    The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA") is a comprehensive statutory scheme to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

234.    T-Mobile is a "person" as defined by Civil Code §§ 1761(c) and 1770 and has provided "services" as defined by Civil Code §§ 1761(b) and 1770.

235.    Civil Code section 1770, subdivision (a)(5) prohibits one who is involved in a transaction from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."

236.    Civil Code section 1770, subdivision (a)(7) prohibits one who is involved in a transaction from "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another."

237.    Plaintiffs and the Class are "consumers" as defined by Civil Code §§ 1761(d) and 1770 and have engaged in a "transaction" as defined by Civil Code §§ 1761(e) and 1770.

238.    T-Mobile's acts and practices were intended to and did result in the sale of products and services to Plaintiffs and the Class in violation of Civil Code § 1770, including, but not limited to, the following:

(a)    misrepresenting that its services would include reasonable security measures designed to protect the privacy and confidentiality of Plaintiffs' and Class members' sensitive personal information;

(b)    misrepresenting that it would supply its services in conformity with its common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class members' sensitive personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

(c)     omitting, suppressing, and concealing the material fact that in connection with providing its services it did not reasonably or adequately secure Plaintiffs' and Class members' sensitive personal information; and

(d)     omitting, suppressing, and concealing the material fact that in connection with providing its services it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class members' sensitive personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

239.    T-Mobile's representations and omissions were material because they were likely to and did deceive reasonable consumers about the adequacy of T-Mobile's data security and ability to protect the confidentiality of customers' sensitive personal information.

240.    Had T-Mobile disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, T-Mobile would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, T-Mobile received, maintained, and compiled Plaintiffs' and Class's sensitive personal information as part of the services T-Mobile provided and for which Plaintiffs and Class members paid without advising Plaintiffs and Class members that T-Mobile's data security practices were insufficient to maintain the safety and confidentiality of Plaintiffs' and Class members' sensitive personal information. Accordingly, Plaintiffs and the Class acted reasonably in relying on T-Mobile's misrepresentations and omissions, the truth of which they could not have discovered.

241.    As a direct and proximate result of T-Mobile's violations of California Civil Code § 1770, Plaintiffs and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including loss of the benefit of their bargain with T-Mobile as they would not have paid T-Mobile for

CLASS ACTION COMPLAINT         JURY TRIAL DEMANDED -
46
Case No:

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

goods and services or would have paid less for such goods and services but for T-Mobile's violations alleged herein; losses from fraud and identity theft; costs for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their sensitive personal information; and an increased, imminent risk of fraud and identity theft.

242.    Plaintiffs, individually and on behalf of the Class, seek an injunction requiring Defendant to adopt reasonable and sufficient data security measures designed to protect and secure Plaintiffs' and the Class members' sensitive personal information.

243.    Pursuant to Cal. Civ. Code § 1782(a), Plaintiffs served Defendants with notice of their alleged violations of the CLRA by certified mail return receipt requested. If, within thirty days after the date of such notification, Defendants fail to provide appropriate relief for their violations of the CLRA, Plaintiffs will amend this Complaint to seek monetary damages.

<u>COUNT IX</u>

**VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT**

**Cal. Civ. Code § 1798.100, *et seq.***

**(On Behalf of the California Subclass)**

244.    Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

245.    California's Consumer Privacy Act ("CCPA") was recently enacted to protect consumers' personal information from collection and use by businesses without appropriate notice and consent.

246.    Cal. Civ. Code § 1798.150(a)(1) provides that "any consumer whose nonencrypted and nonredacted personal information . . . is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature

CLASS ACTION COMPLAINT        JURY TRIAL DEMANDED -
47
Case No:

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

of the information to protect the personal information" may commence a civil action for any of the following:

(a)    Damages, not less than $100 and not greater than $750 per consumer per incident, or actual damages, whichever is greater;

(b)    Injunctive or declaratory relief; and

(c)    Any other relief the Court deems proper.

247.    Plaintiffs and Subclass Members provided T-Mobile with nonencrypted and nonredacted personal information, as defined in Cal. Civ. Code § 1798.81.5(d).

248.    As alleged herein, Plaintiffs' and Subclass Members' nonencrypted and nonredacted personal information was subject to unauthorized access, exfiltration, theft, and disclosure, when it was stolen by cyber criminals as a result of the Data Breach caused by T-Mobile.

249.    The unauthorized access, exfiltration, theft, and disclosure, of Plaintiffs' and Subclass Members' sensitive personal information was a direct result of T-Mobile's failure to implement and maintain reasonable security procedures appropriate to the nature of the information they stored and collected.

250.    As a direct and proximate result of T-Mobile's violations of the CCPA, Plaintiffs and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including loss of the benefit of their bargain with T-Mobile, as they would not have paid T-Mobile for goods and services or would have paid less for such goods and services but for T-Mobile's violations alleged herein; losses from fraud and identity theft; costs for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their personal information; and an increased, imminent risk of fraud and identity theft.

CLASS ACTION COMPLAINT        JURY TRIAL DEMANDED - 48
Case No:

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

251.    Plaintiffs, individually and on behalf of the Subclass, seek an injunction requiring Defendant to adopt reasonable and sufficient data security measures designed to protect and secure Plaintiffs' and the California Subclass Members' sensitive personal information, as well as actual damages on behalf themselves and the Class.

252.    Pursuant to Cal. Civ. Code § 1798.150(b), Plaintiffs served Defendants with notice of the specific provisions of the CCPA Defendants have violated by certified mail return receipt requested. If, within thirty days after the date of such notification, Defendants fail to provide appropriate relief for their violations of the CCPA, Plaintiffs will amend this Complaint to seek statutory damages on behalf of themselves and the Subclass.

## COUNT X

## VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 Pa. Stat. §§ 201-1 to 201-9.2 ("UTPCPL")

### (On Behalf of the Pennsylvania Subclass)

253.    Plaintiffs restate and reallege all proceeding allegations above as if fully set forth herein.

254.    Plaintiffs and T-Mobile are each a "person" as defined at 73 Pa. Stat. § 201-2(2).

255.    Plaintiffs and Class Members purchased goods and services in "trade" and "commerce" as defined at 73 Pa. Stat. § 201-2(3).

256.    Plaintiffs and Class Members purchased goods and services primarily for personal, family, and/or household purposes under 73 Pa. Stat. § 201-9.2.

257.    T-Mobile engaged in "unfair methods of competition" or "unfair or deceptive acts or practices" as defined at 73 Pa. Stat. § 201-2(4) by engaging in the following conduct:

a.    Representing that its goods and services had characteristics, uses, benefits, and qualities that they did not have – namely that its goods, services, and business practices were accompanied by adequate data security (73 Pa. Stat. § 201-2(4)(v));

CLASS ACTION COMPLAINT        JURY TRIAL DEMANDED -
49
Case No:

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

b.  Representing that its goods and services were of a particular standard or quality when they were of another quality (73 Pa. Stat. § 201-2(4)(vii));

c.  Advertising its goods and services with intent not to sell them as advertised (73 Pa. Stat. § 201-2(4)(ix)); and

d.  "Engaging in any other . . . deceptive conduct which creates a likelihood of confusion or of misunderstanding" (73 Pa. Stat. § 201-2(4)(xxi)).

258.  These unfair methods of competition and unfair or deceptive acts or practices are declared unlawful by 73 Pa. Stat. § 201-3.

259.  T-Mobile's unfair or deceptive acts and practices include but are not limited to: failing to implement and maintain reasonable data security measures to protect PII; failing to identify foreseeable data security risks and remediate the identified risks; failing to comply with common law duties, industry standards and FTC guidance regarding data security; misrepresenting in its Privacy Policy that it would protect PII; and omitting and concealing the material fact that it did not have reasonable measures in place to safeguard PII.

260.  T-Mobile's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of T-Mobile's data security practices and ability to protect PII.

261.  T-Mobile intended to mislead consumers and induce them to rely on its misrepresentations and omissions. As set forth herein, Plaintiffs relied on T-Mobile's misrepresentations and omissions relating to its data privacy and security.

262.  Plaintiffs and Class Members acted reasonably in relying on T-Mobile's misrepresentations and omissions, the truth of which they could not have discovered with reasonable diligence. Had T-Mobile disclosed to consumers that its data security systems were not secure and, thus, were vulnerable to attack, Plaintiffs and Class Members would not have given their PII to T-Mobile.

BORDE LAW PLLC
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

263.   T-Mobile acted intentionally, knowingly, and maliciously in violating the UTPCPL, and recklessly disregarded consumers' rights.

264.   T-Mobile's past data breaches put it on notice of the importance of data security and that its card processing system was subject to attack.

265.   As a direct and proximate result of T-Mobile's unfair methods of competition and unfair or deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for T-Mobile's services; loss of the value of access to their PII; and the value of identity protection services made necessary by the Data Breach.

266.   Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including the following as expressly permitted under 73 Pa. Stat. § 201-9.2:

a.   "actual damages or [statutory damages of] one hundred dollars ($100), whichever is greater;"

b.   treble damages, defied as "three times the actual damages;"

c.   "reasonable attorney fees" and litigation "costs;" and

d.   "such additional relief as [the Court] deems necessary or proper."

267.   Plaintiffs and Class Members also seek injunctive relief as set forth below.

## COUNT XI

## DECLARATORY AND INJUNCTIVE RELIEF

268.   Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

269.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the statutes described in this Complaint.

270.    An actual controversy has arisen in the wake of the Data Breach regarding T-Mobile's present and prospective common law and statutory duties to reasonably safeguard its customers' sensitive personal information and whether T-Mobile is currently maintaining data security measures adequate to protect Plaintiffs and Class Members from further data breaches. Plaintiffs allege that T-Mobile's data security practices remain inadequate.

271.    Plaintiffs and Class Members continue to suffer injury as a result of the compromise of their sensitive personal information and remain at imminent risk that further compromises of their personal information will occur in the future.

272.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that T-Mobile continues to owe a legal duty to secure consumers' sensitive personal information; to timely notify consumers of any data breach; and to establish and implement data security measures that are adequate to secure customers' sensitive personal information.

273.    The Court also should issue corresponding prospective injunctive relief requiring T-Mobile to employ adequate security protocols consistent with law and industry standards to protect consumers' sensitive personal information.

274.    If an injunction is not issued, Plaintiffs and Class Members will suffer irreparable injury, for which they lack an adequate legal remedy. The threat of another data breach is real, immediate, and substantial. If another breach at T-Mobile occurs (which has already happened), Plaintiffs and Class Members will not have an adequate remedy at law, because not all of the

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

resulting injuries are readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

275.    The hardship to Plaintiffs and Class Members if an injunction does not issue greatly exceeds the hardship to T-Mobile if an injunction is issued. If another data breach occurs at T-Mobile, Plaintiffs and Class Members will likely be subjected to substantial identify theft and other damages. On the other hand, the cost to T-Mobile of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and T-Mobile has a pre-existing legal obligation to employ such measures.

276.    Issuance of the requested injunction will serve the public interest by preventing another data breach at T-Mobile, thus eliminating the additional injuries that would result to Plaintiffs and the millions of consumers whose confidential information would be further compromised.

## **RELIEF REQUESTED**

Plaintiffs, on behalf of all others similarly situated, request that the Court enter judgment against T-Mobile including the following:

A.    Determining that this matter may proceed as a class action and certifying the Classes asserted herein;

B.    Appointing Plaintiffs as representative of the applicable Classes and appointing Plaintiffs' counsel as Class Counsel;

C.    An award to Plaintiffs and the Classes of compensatory, consequential, statutory, restitutionary, nominal, and treble damages as set forth above;

D.    Injunctive relief as described herein;

E.    Entering a declaratory judgment stating that T-Mobile owes a legal duty to secure consumers' sensitive personal information, to timely notify consumers of any

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722

data breach, and to establish and implement data security measures that are adequate to secure customers' sensitive personal information;

F.    An award of attorneys' fees, costs, and expenses, as provided by law or equity;

G.    An award of pre-judgment and post-judgment interest, as provided by law or equity; and

H.    Such other relief as the Court may allow.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Dated: February 3, 2023          By:    s/ Manish Borde
                                          Manish Borde, WSBA #39503
                                          **BORDE LAW PLLC**
                                          600 Stewart St., 400
                                          Seattle, WA 98101
                                          Telephone: (206) 531-2722
                                          E-mail: mborde@bordelaw.com

                                          Ronald A. Marron*
                                          Alexis M. Wood*
                                          Kas L. Gallucci*
                                          **LAW OFFICES OF RONALD A. MARRON**
                                          651 Arroyo Drive
                                          San Diego, CA 92103
                                          Tel: (619) 696-9006
                                          Fax: (619) 564-6665
                                          ron@consumersadvocates.com
                                          alexis@consumersadvocates.com
                                          kas@consumersadvocates.com

CLASS ACTION COMPLAINT     JURY TRIAL DEMANDED -        **BORDE LAW PLLC**
54                                                      600 Stewart Street, Suite 400
Case No:                                               Seattle, Washington 98101
                                                        (206) 531-2722

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Margaret MacLean*
Christian Levis*
Amanda Fiorilla*
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone:     (914) 997-0500
Facsimile:      (914) 997-0035
mmaclean@lowey.com
clevis@lowey.com
afiorilla@lowey.com

Anthony M. Christina*
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone:     (215) 399-4770
Facsimile:      (914) 997-0035
achristina@lowey.com


*Pro Hac Vice Forthcoming*

CLASS ACTION COMPLAINT      JURY TRIAL DEMANDED -
55
Case No:

**BORDE LAW PLLC**
600 Stewart Street, Suite 400
Seattle, Washington 98101
(206) 531-2722